[Civ. No. 18919.   First Dist., Div. One.   Sept. 20, 1960.]

L. H. PRICE et al., Respondents, v. JOHN D. SLAWTER, JR., Appellant.

Di Maria & Daschbach for Appellant.

L. W. Wrixon and James W. Foley for Respondents.

BRAY, P. J.—In an action for declaratory relief, dissolution of a joint venture and an accounting, defendant John Slawter appeals from an adverse interlocutory judgment which found that the joint venture is indebted to plaintiffs in the sum of $191,237.09, plus interest at 7 per cent per annum from September 1, 1958, dissolved the joint venture, ordered the sale of its property and the winding up of its affairs. Plaintiffs have moved this court to make additional findings of fact and to enter judgment thereon.

## QUESTIONS PRESENTED

1. Sufficiency of the evidence.
2. Plaintiffs' right to interest.
3. Should this court make findings concerning an encumbrance placed on the property by defendant John Slawter and enter judgment thereon?

## 1. EVIDENCE

Recognizing the rule that where there is a conflict in the evidence this court is bound by the trial court's findings thereon, defendant's main contention is that the evidence supporting the findings is not substantial. However, he mainly cites evidence which might have supported his theory of the case, ignoring contrary evidence. A study of the transcript

reveals that the court's findings are well supported by substantial evidence.

July 15, 1955, plaintiff Van Buskirk and defendant John D. Slawter, Jr., and Ben Lee Slawter (now deceased) entered into a brief written agreement headed "Memorandum of Joint Venture" which stated that on July 7 the three as buyers had entered into an agreement with L. L. Stevens and Muriel M. Stevens as sellers, to purchase certain real property in Barstow "for the purpose of constructing a motel or hotel" thereon. It then confirmed their oral understanding that "the profits, earnings, losses and liability arising from and pursuant to said agreement shall be shared" among the three, each one-third.

On October 11 the three and plaintiff L. H. Price entered into "Modification of Memorandum of Joint Venture" in which they referred to the agreement of July 15, and modified it by providing that "All profits, earnings, losses and liability arising from the purchase and development of said real property" should be shared one-quarter each. It then stated that plaintiffs had theretofore advanced $12,000 to the joint venture to acquire the property and that it should constitute a loan to the joint venture without interest, to be repaid from the profits or earnings prior to distribution of any profits or earnings to the parties. Plaintiffs agreed to lend to the joint venture without interest "all further sums required for the development of said real property by construction of a hotel or motel thereon with related improvements, and the operation and maintenance thereof as an operating business. All such further loans to this joint venture shall be repaid from earnings or profits" prior to distribution to the parties. It is obvious from a reading of them that these brief memoranda did not cover all of the understanding of the parties with reference to what was intended to be and was financially a rather large project, to wit, a 97-unit motel which the parties orally agreed they would construct. The motel was completed in June, 1956, and listed for sale but no sale was effected. Ben Lee Slawter and his wife, Frances R. (sued herein as administratrix of his estate), took residence at the motel to operate it until it should be sold. The parties agree that the motel was to be built for sale and not for permanent operation. Ben Lee Slawter died October 19, 1956. Thereafter Frances managed the operation of the motel until March 14, 1957, when it was leased to L.B.K. Corporation which operated it until the

end of August, 1957, since which time the parties have operated it through a resident manager.

*The Findings Are Supported.*

Finding 2 (b) is to the effect that the parties orally agreed that "John D. Slawter, Jr. and Ben' Lee Slawter, would effect a sale of said motel during the period of its construction for delivery either during construction or within six months after construction." Finding 2 (c) finds that the net profit on sale would be divided equally among the parties "and that if it became necessary to operate the motel for six months after completion in order to realize for income tax purposes a long term capital gain" the motel would be operated for such period. Finding 2 (e) and finding 23, read together, are to the effect that if the motel were not sold and possession delivered during construction, Ben Lee Slawter would manage and operate the motel after completion until such time as it might be delivered to a purchaser thereof, but in any event the motel would be sold and possession delivered within six months of completion.

Van Buskirk testified that prior to entering into the joint venture he told both Slawters that he was not interested in operating a motel and did not intend to be. The proposed motel was to cost about $290,000, the lot to cost $45,000, and the project was to be financed principally by a first deed of trust for $280,000 and a second for some $50,000. The Slawters were interested in building and selling. The only discussion with them concerning operating the motel was that they might have to operate it for six months to get a capital gain when the motel was sold. If a sale came along, they might make a lease with an option to buy at the end of six months. Even if they sold it a month before completion they would hold it for six months to get the capital gain. The loan commitment was only for $260,000 instead of $280,000 as contemplated. The Slawters satisfied Van Buskirk that the $20,000 which he was to put up would be tied up for only a relatively short time as they believed the motel would be sold before completion.

While there is a slight inconsistency in the above mentioned findings, the findings taken as a whole are to the effect that the parties contemplated that there would be no difficulty in selling the motel, if not during construction, at least during the six months period for which it might be advisable to hold the property for income tax purposes, and that if not sold during construction it would be operated by Ben Lee Slawter for the joint venturers until sold. The evidence clearly sup-

ports these findings. Although listed for sale during construction and also during the six months period thereafter, no purchaser appeared. When no buyers for the motel appeared the venture apparently had no choice other than to continue its operation under the management of Ben Lee Slawter. On his death, the operation continued under the management of his wife. However, to keep the operation going, as the motel was not on a paying basis, it was necessary for plaintiffs from time to time to advance funds. This they did. Finding 9 found that the business of the joint venture can only be carried on at a loss. Finding 8 finds the loss as of August 31, 1958, to be $103,160.19. Mr. Harold A. Kuhn, a certified public accountant, found that the books were well kept, maintained in accordance with accepted accounting methods, and that the statement of operations was likewise determined in accordance with generally accepted accounting principles. Defendant attacks the method used by him. However, the trial court determined it to be a proper method, and we are bound by that determination. Defendant contends that under the agreement of the parties the operation of the business was to continue until a sale satisfactory to all parties was made, and that plaintiffs were to lend all moneys necessary to keep the business going, no matter how much the business lost or how much plaintiffs would have been required to advance. As stated above, the evidence clearly shows that the parties contemplated a limited operation of the business, only if operation was necessary.

Defendant contends that upon the death of Ben Lee Slawter, the original joint venture was thereby dissolved, and a new one orally formed, with Mrs. Slawter taking his place. While defendant John D. Slawter, Jr., testified there was such an agreement, plaintiff Van Buskirk denied that there was, and the court resolved this conflict in favor of plaintiffs. Frances Slawter did not testify. Moreover, there was no testimony as to what the terms of such alleged new venture, or the interest of Mrs. Slawter therein, was supposed to be. The court found that the parties did not revive the original agreement or enter into any new agreement on Ben Lee Slawter's death. Defendant bases the contention of a new joint venture with Mrs. Slawter mainly upon the fact that she signed, with the remaining three joint venturers, a promissory note, chattel mortgage, deed of trust, and a lease and option to sell, executed after her husband's death. Actually Frances was carried on the books of the venture at a monthly salary for a period of

about five months. The motel property stood of record in the names of the four venturers. As Ben Lee was dead when the last mentioned documents were signed, it is understandable why Frances individually and as administratrix of Ben Lee's estate was required to sign them. The mere circumstance of Frances' signing these papers could not overcome Van Buskirk's positive testimony that no agreement was entered into joining her with the others.

The court ordered the joint venture to be wound up, its assets sold and its liabilities to be paid. This order is supported by four specific grounds:

1. The expiration of the agreed term. Section 15031, Corporations Code, provides in part: "Dissolution is caused: (1) Without violation of the agreement between the partners, (a) By the termination of the definite term or particular undertaking specified in the agreement. . . ." As above stated, the original term, as agreed, had expired.

2. The death of joint adventurer Ben Lee Slawter. Section 15031, subdivision (4), provides that dissolution is caused by the death of any partner. ▪ "The rule is that the rights and liabilities of joint adventurers, as between themselves, are governed by the same principles which apply to a partnership." (*Zeibak* v. *Nasser* (1938), 12 Cal.2d 1, 12 [82 P.2d 375].)

▪ 3. The court found and the finding is well supported by the evidence, that the joint venture could be carried on only at a loss. Section 15032, subdivision (1)(e), Corporations Code, provides that dissolution shall be decreed whenever "The business of the partnership can only be carried on at a loss. . . ." Defendant, by a manipulation of figures contrary to those accepted by the court and testified to by the expert as being the proper method of accounting, contends that the operation could be carried on at a profit. The evidence clearly shows that as originally contemplated the venture was to be one in which only a small investment would be required and that only for a few months. As of August 31, 1958, plaintiffs, to keep the motel operating, had advanced $186,237.08, and as of the trial date had advanced a further $5,000. This is some evidence that the operation was not a successful one. It is only natural that defendants, having no moneys invested in the operation, would hope that it be continued at plaintiffs' expense. This fact probably accounts for the defendants not being willing to accept an offer of $600,000 for the property made July 23, 1958. This sum would have yielded a sub-

stantial profit. Defendant contends that the offer was not communicated by plaintiffs to Frances Slawter. However, John Slawter testified that he was not interested in the sale of the motel at that price and that he told plaintiff Van Buskirk that neither he nor Frances was.

4. Section 15032, subdivision (1)(f), Corporations Code, provides for dissolution whenever ''Other circumstances rendered a dissolution equitable.'' Certainly the circumstances called for equitable action to terminate a situation which was becoming highly burdensome to the plaintiffs and without any corresponding burden on defendants. Moreover, John D. Slawter, Jr., without advising plaintiffs, encumbered his interest in the venture by execution of a note and deed of trust thereon for $35,000, which sum he used for his own purposes.

The facts in *Shannon* v. *Hudson* (1958), 161 Cal.App.2d 44 [325 P.2d 1022], which held that the trial court did not err in refusing to dissolve a joint venture for the construction of a motel and its ultimate sale for a profit, are entirely different from those in this case. There, the out-of-pocket loss from a four-year operation was only $1,100, and there was $1,600 in the motel's bank account. Moreover, the evidence showed that there was a reasonable prospect of an immediate increase in business and in the value of the property itself. Nor was there a situation where, as here, a limited operation was contemplated by the parties, nor, as here, did one of the joint venturers die. It is significant that the court commented as follows: ''Obviously if it appears that continued losses are inevitable and that the parties will likely be unable to sell the motel at a profit, then their primary purpose must be abandoned and the property must be sold at any reasonable price that can be obtained.'' (P. 49.) Applicable to defendant's arguments in our case is the following statement from *Shannon*: ''The basic difficulty with plaintiff's arguments is that she would have this court reevaluate the evidence, draw inferences contrary to those drawn by the trial court, and direct the trial court in the exercise of its discretion. Under firmly established principles we are not at liberty to do this.'' (P. 50.)

## 2. INTEREST

The memorandum of joint venture of October 11, 1955, provided that plaintiffs ''agree to loan to the joint venture, without interest,'' all further sums required for

the development of said real property, the construction of the motel, and "the operation and maintenance thereof as an operating business," such further loans to be repaid from earnings or profits. As herein pointed out, it was not contemplated that the joint venture would continue indefinitely. The court allowed no interest on advances made by plaintiffs prior to September 1, 1958, but did allow interest from then on. That date was the date adopted by the court as the date when defendant John Slawter informed plaintiffs that neither he nor Frances was interested in accepting the $600,000 offer for the property. At that time the joint venture was in litigation, the complaint for dissolution and accounting having been filed January 20, 1958. The court found that it was the intention of the parties that the advances and loans made by plaintiffs should be without interest "for such reasonable time as would permit the parties in the ordinary course of business to construct and sell said motel." It further found that plaintiffs desired to accept the $600,000 offer and so informed defendants, but that defendants made no response thereto. The evidence clearly indicates that it was never contemplated by the parties that the venture was to continue on indefinitely with the plaintiffs putting up money without interest. The time had long since passed when in the contemplation of the parties the venture was supposed to terminate. Even though the venture was in litigation, the failure of defendants to join in the acceptance of the offer, or, at least, to point out anything unreasonable about it, constituted a violation of the joint venture agreement, for which violation the court was justified in allowing interest as damages. Defendant concedes that it was the intention of the parties to build the motel for sale purposes rather than operation. Even during the litigation, plaintiffs, to save the venture, had to advance more money, all to defendants' benefit. Actually, in fixing September 1, 1958, as the date when interest was to commence, the court was more favorable to defendants than it might have been. The filing of the suit by plaintiffs constituted in effect a demand by them for the moneys they had advanced and the court could have fixed the date of filing suit as the date when the interest commenced.

Defendant concedes that it originally was the intention of the parties to build the motel for sale purposes rather than operation. Defendants' refusal to accept a reasonable offer under the circumstances where plaintiffs were putting up

the money to keep the motel operating and the defendants were not advancing any moneys, made the action of the court in allowing interest from then on an equitable one. The situation is analogous to that of a noninterest-bearing promissory note, where the rule is as set forth in *Puppo* v. *Larosa* (1924), 194 Cal. 717, 720 [230 P. 439]: "If, however, interest is not expressly reserved, and the paper matures at a time certain, it will draw interest from its maturity by operation of law without prior demand, and at the legal rate. In such case interest is in the nature of damages for the detention of the debt, and is not recoverable by virtue of any provision of the contract." In the Puppo case the note provided " 'at the rate of no interest.' " The court said: "Interest before maturity and damages for not paying the amount when due are two different things. Some confusion has arisen in this connection because the damages have usually been reckoned in terms of interest; but interest after maturity is not according to contract, but by way of damages, and is recoverable as a matter of law when ascertainable. Therefore, the court has power to determine the damages, which it generally does by allowing legal interest after maturity and up to the time of judgment. In such cases there seems to be no good reason under our practice why judgment may not be given for interest from the maturity of the note, or in damages, either mode being proper." (P. 721.)

Section 3302, Civil Code, provides: "The detriment caused by the breach of an obligation to pay money only, is deemed to be the amount due by the terms of the obligation, with interest thereon."

### 3. FINDINGS AND JUDGMENT ON ENCUMBRANCE

Plaintiffs moved this court to find that a $35,000 deed of trust placed by defendant John D. Slawter, Jr., on the motel premises, the proceeds of which admittedly he used for his own purposes, is not a lien on the joint venture property but on his interest alone, and that we make a similar finding as to an alleged attachment lien, and that we enter a judgment to the effect that these liens are subordinate to the rights of the plaintiffs and should be paid out of the amount, if any, the trial court finds due defendant John D. Slawter, Jr., after a complete accounting and the payment of the debts of the joint venture including its indebtedness to plaintiffs.

We see no reason for so doing. It is possible that before

724

the accounting in this case is had, these liens may have been satisfied. (Defendant's brief states that the indebtedness on the deed of trust has been reduced to $5,000.) In any event, the proper forum for the consideration of these matters is the trial court on the accounting.

The motion is denied and the judgment affirmed.

Tobriner, J., and Duniway, J., concurred.